Thank you, Your Honor. May it please the Court, my name is Steve Pfeiffer, appearing on behalf of Fred Wahl Marine and American Longshore Mutual Insurance. And we're, the employer's petitioning this Court to find that the one job identified by the ALJ and the Board as suitable for and available to Mr. McCullough is sufficient to satisfy the employer's burden of proof that it has established suitable alternate employment. And therefore, Mr. McCullough's claim for permanent total disability benefits is defeated. The Board found that Mr. McCullough was capable of performing the Dairy Queen job, and it was available to him. But it found that this was not sufficient to satisfy the employer's burden of proof. And the Board's rule is that one job that is suitable and available is not sufficient to meet or satisfy the employer's burden. And it's been held that that's been the implicit holding of the Bumble Bee Seafoods case of this circuit. And Bumble Bee involved a case where the employer argued that it had established suitable alternate employment by arguing that the claimant in that case was capable of working a broad range of general sedentary jobs. And had offered the claimant a job as a security guard on the day prior to hearing. And in that case, Bumble Bee, the Ninth Circuit, said that that was not sufficient. In this case, what we're relying on is the ALJ and the Board's finding that there was a job identified that was available and suitable to Mr. McCullough. And that should meet the employer's burden. And that's the way the Fifth Circuit analyzes the suitable alternate employment analysis. And the PMC Crane Company v. Hayes case cited in the briefs has found that this Board's holding is inflexible. And it restricts the fact finder's ability to make a determination based on the specific facts of each particular case. Counsel, one of the alternative arguments is that even assuming that a single job could suffice, theoretically, that the Dairy Queen job is not suitable anyway. So there aren't any suitable positions. Could you respond to that alternative argument? Your Honor, it was the Board, the ALJ and Board, held that that job was suitable for. I understand, but why is it suitable? Well, what makes it suitable is that the labor market establishes that this job is available in Reedsport, Oregon, where Mr. McCullough resides. That they have hirings. They have an established pattern of hiring new workers. They have had available openings in the past relevant period of time. And that the job falls within the physical restrictions as set forth by Dr. Burt, the attending physician, and the PRA doctor. And the other testimony that established that Mr. McCullough was capable of working in the light to medium category. And on that basis, the ALJ and Board found that this was an appropriate job for Mr. McCullough. So what do you make of the Fourth Circuit decision in Lance, which indicates that a single job can't be sufficient? Can or cannot? Cannot. Cannot, yes. And that's the holding in the Fourth Circuit. That simply the Fourth Circuit has held. You just disagree with it. Well, it's not. Yes, we're urging this Court to not adopt the reasoning that the Fourth Circuit adopts in that case. Because it does hold, as Your Honor points out, that one job is not sufficient. That the employer's burden is to show a variety of suitable jobs more than one. What the Fourth Circuit said was a single job opening cannot reasonably or realistically satisfy an employer's burden of demonstrating the types of jobs that the claimant can perform. And those types of jobs are available in the relevant community. And that there's a reasonable likelihood that the claimant would be hired, etc. And then it goes on to say, if a vocational expert is able to identify and locate only one employment position, it's manifestly unreasonable to conclude that an individual would be able to seek out and, more importantly, secure that specific job. What's wrong with that analysis? Well, I think the Board is adopting that analysis. I think to the particular facts of this case, the reason why I think it's wrong is because we're talking about narrowly focusing on the Reedsport area. And one of the other sub-issues in this case is the fact that Mr. McCullough didn't have his driver's license for non-payment of traffic tickets. And it was suspended. And so the ALJ and Board limited his labor market to Reedsport. It wouldn't consider the two dairy queens in Coos Bay and the one in Florence and the one in North Bend. Well, there's five stores. Well, the Board and ALJ said, we can't consider that this worker can travel 21 miles to Florence or 27 miles to Coos Bay because he doesn't have a driver's license. And the employer's position in this case is that that was a limitation that was solely in the control of the claimant, that Mr. McCullough had the sole ability to remedy the situation, to pay his traffic tickets, to apply for a hardship license with the Department of Motor Vehicles, which would have expanded his labor market. How far does that go? What if someone had just never learned how to drive and they didn't want to learn how to drive? It was just not something they wished to do. Do you enforce that and say, well, you could, so you have to? Well, I think that would be unreasonable, Your Honor. Because that would be more akin to a permanent limitation, I would find. For example, the cases have cited preexisting medical conditions and said that now that has to be taken into account if it's approved. Well, this was preexisting in the sense that it didn't arise just because of this proceeding. That is correct, Your Honor. He actually lost his license prior to his injury for the nonpayment of traffic tickets. So it was preexisting, certainly, to the injury. But it was a temporary condition, not a permanent one. In your example that you give, I would think if someone has reached the age of 50 and has decided they're not going to drive, it would be unreasonable for the employer to assert if you would just go take the driver's test, you could drive to Coos Bay or Florence. But that's not the case we're looking at. How could he drive to Coos Bay or any other place? He can't sit for more than half an hour. I mean, he's got funny limitations, I shouldn't say funny limitations, but somewhat odd limitations. He can't sit. He can't stand. I mean, to drive 21 miles or 27 miles certainly is probably going to take more than half an hour with today's traffic. And there was conflicting medical evidence as to whether he could drive that far. There was certainly evidence that he said that he was uncomfortable driving that far and that he couldn't. There was evidence from the medical saying that he was able to sit longer than a half hour at a time. So certainly if the court finds that he's not capable physically of driving that far, then that would limit his labor market further. But I don't believe that that's warranted under the facts of this case. Because when you consider a labor market, there was testimony in the record that this would quadruple the number of available jobs, as the board noted in its decision. But if he can't get there, you know, it doesn't matter if there are 1,000 jobs. If he can't get there physically, then they might as well be in New York City. That's correct. I mean, that's what we're faced with in the record, isn't it? That there's some question about whether he could even drive that far. Well, there's conflicting evidence on that point, certainly. Your Honor is correct to note that, yes. And if one finds that he's physically not capable of driving 21 miles to Florence on the basis of some part of the record, but that's not, I don't think the ALJ ever reached that, nor did the board. They simply precluded these jobs because he didn't have a driver's license. So there was never any analysis as to whether if he had had his license, whether his physical restrictions would have precluded him from driving that far. Likewise, the ALJ excluded one of the restaurant jobs in Reedsport because of, as the judge put it, the claimant had tested positive for THC, and for this reason alone this position is not reasonably available to him because this employer conducts drug tests. An employer would argue in this case, Your Honor, that that's a backwards analysis, that the job shouldn't, an employer or potential job shouldn't be excluded simply because it drug tests, because even the Supreme Court here in Oregon has held that even if you have a medical marijuana card, the employer can terminate you. So drug testing is perfectly reasonable. The remedy here, the answer is Mr. McCulloch shouldn't be smoking pot. Then that makes that job available to him. So I think on the record as a whole, we would urge that the Court find that the job identified when one would remove the impediment of the drug testing and the driver's license, that this record is established that there is suitable alternate employment. And I'd like to reserve any comment on the attorney fee issue, if that's all right with the Court, until after Mr. Rabinowitz. If you want to reserve the remainder of your time. Thank you, Your Honor. May it please the Court. Counsel. The test is really whether there was substantial evidence in the record for the ALJ to find that Mr. McCulloch was permanent and totally disabled. And the record in this case is actually overwhelming evidence that he was permanently and totally disabled. He had a two-level fusion in his low back with rods installed on both sides of his spinal column. They were screwed into the bones. And essentially he couldn't bend over because he has no movement in those two lower joints in his low back. So whenever he'd have to bend down, he'd have to keep his low back stiff. And he, sweeping, things like that, lifting, he was very limited in this respect. He had chronic pain. He had an 11th-grade education, no GED. When he was tested by the OWCP, the Office of Workers' Compensation Program's vocational counselor, who was appointed in this case, he was found to have a 5th-grade spelling level, 6th-grade math level, 9th-grade reading level. And the OWCP vocational counselor spent eight months trying, scouring the whole Reedsport area to try to find jobs for Mr. McCullough, and he found one job that he could even apply for, and he didn't even get an interview for that job. And the other thing, on top of everything, is the economy in this part of the state, as it was described by the people in Reedsport, is dead. The other day in the paper, there was an article in the Oregonian on the economy coming back with jobs being added in January, and they specifically commented that in Douglas County, where Reedsport is located, the unemployment rate dropped from 14.5 percent to 14 percent, and this was considered positive news in the economy. But this is the economy that Mr. McCullough is dealing with, and it's impossible to find a job in this part of the state. And, in fact, before he found the job at Fred Wall Marine, he had spent two years looking for a job, and that's when he had a good back. I don't know how the ALJ came up with the idea that he could work, that the job at Dairy Queen was suitable or available. Essentially, there's no substantial evidence in the record to support that, because the doctor, Dr. Burke, said specifically that he could only stand and walk four to six hours a day, and that job was standing and walking at least six hours a day. So what is he going to do when he can only stand and walk for four hours a day? He's going to lose that job if he could get it. And the ALJ also came up with an absolutely unexplainable reason why it was available. Elaine McCullough, Bill McCullough's wife, had worked previously as a cook for a restaurant in Reedsport, and she had been looking for work for two years. She had looked at every one of the fast food restaurants in the area, including Dairy Queen. She had talked to friends. She had looked by word of mouth, everything, and the judge found that the only way she looked was by looking to see whether there was a help wanted sign in the window. And then he said because she didn't look by word of mouth, the job was available if she had diligently searched for it, and she had diligently searched for it. What is your response to counsel's argument that jobs that were found unsuitable because of a drug testing requirement should not be excluded from consideration? Well, I think the jobs were found unsuitable for more than just the drug testing, but the reason Mr. McCullough was taking marijuana was for the back pain from the injury. It wasn't like he was, you know, taking illegal drugs for reasons unrelated to his injury, and I think that's the reason that the judge found that these jobs were not available. I want to just talk a little bit about the Fourth Circuit opinion, because I don't think the Fourth Circuit and the Fifth Circuit have the same law as far as permanent total burdens, burden to avoid permanent total disability, and the PNM Crane case and the Lentz case are entirely consistent. And if this case were in the Fourth or Fifth Circuit, there would be no question that Mr. McCullough would have a permanent total disability award. Lentz was a case where a longshoreman got hurt. I don't know exactly where it was in the Fourth Circuit, Virginia, South Carolina, but he had a very severe orthopedic injury. He had a crushed pelvis, a crushed leg, and what made it even more difficult a case is he couldn't read or write. He was totally illiterate. But the insurance company still came up with a job for Mr. Lentz, and I had to reread the opinion yesterday to make sure I had the facts correctly, but they came up with a job for him as an elevator operator. And this case arose sometime in the 80s. I don't remember any building in Portland having elevator operators, even in the 1980s. I remember when Meyer and Frank was Meyer and Frank. It's now Macy's across the street. They used to have elevator operators announcing each floor, but I think they even gave that up sometime in the 70s. But in any event, the vocational counselor for the insurance carrier came up with a job as an elevator operator. And the ALJ said, well, that's the only job you came up with, and physically it was suitable because all you did was sit there and push buttons all day. So he said, but that's not enough to find one job. And the Fourth Circuit said our test is not one job. Our test is you have to find a range of jobs, range of types of jobs, and all you came up with was one job, and that's not sufficient. What happened in the PM crane case is the injured worker, Hayes, was a crane operator, and they found one job for him as a marine dispatcher, but they also found a range of cases for him, cashier, courier, light delivery jobs that he could apply for and could realistically secure. And the ALJ ignored the range of jobs and held that one job as a marine dispatcher was not enough. And the Fifth Circuit reversed and said, but he came up, the employer came up with a range of jobs, and that's what our test is, is a range of jobs that he could, that are suitable that he could realistically secure. And because of that, they sent it back to the ALJ for further findings. In this case, all they came up with for Bill McCullough was one job. They didn't have a range of jobs that he could obtain. In fact, Mr. McAllen, the OWCP locational counselor, couldn't find any jobs in Reedsport that were suitable and available for Mr. McAllen. He came up with one job in a wastewater plant that he recommended Mr. McAllen, Mr. McCullough, excuse me, apply for, and he applied for the job but couldn't get an interview. He looked at gas station jobs. He looked at fast food restaurants. He looked at motel jobs. He found nothing, and he gave up after eight months. He said the economy is dead in this area. This man doesn't have the physical or academic or transferable skills for this kind of work. He had worked previously as a diesel mechanic, truck driver, and well driller before he started work in the shipyards. And all of this work is heavy work. He couldn't do it, and he had nothing to fall back on. And as the judge found and as Mr. McAllen found, the economy was dead in Reedsport. And when you're competing with a 14 percent unemployment rate, this is not a man who's going to find work very easily. The other thing I just want to add on the attorney fee issue, this Court had held in Christensen and Van Skuyte cases in March of 2009 that when the board determines a market rate, they have to determine it based on what comparable lawyers are receiving for similar services outside of the longshore area. They can't rely on the longshore area for market rates because we're not allowed to charge fees to clients or even negotiate fees with clients. And the board decision in this case on attorney fees was almost identical to what it did in Christensen. In fact, other than the caption, I think the wording is exactly identical. And they came up with this decision in October of 2008. This board reversed the board in Christensen in March of 2009, and I think the employer pretty much concedes that the attorney fee order needs to be vacated and remanded. Thank you, counsel. Thank you. Rebuttal. Thank you. To counsel's point that the Fourth and Fifth Circuit are in agreement, I just would like to draw the Court's attention to the holding and fee in M. Crane. Quote, we disagree with the holding in Lance, and that was the Fourth Circuit case, that an employer's demonstration of only one employment opportunity in the local community is manifestly insufficient for it to satisfy its alternate employment burden of proof. So clearly there is a split there. And the wide range of jobs, as counsel suggests, only one job, and indeed the ALJ focused on finding the Dairy Queen job, but there were other restaurant jobs of a general nature that I think the ALJ could have found appropriate,  And as to the attorney fee issue, Your Honor, this Court did decide the Christensen and Bansai cases after the decision of the ALJ in this case, so clearly the board should do what it's been doing in other post-Christensen cases and use the Ninth Circuit's analysis and take a look at this attorney fee issue. Thank you.  Thank you both for your arguments. The case just heard will be submitted for decision and will be in recess for the morning.
judges: Mahan, Thomas, Graber